[Cite as *State v. Nallen*, 2013-Ohio-3284.]

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee            :            C.A. CASE NO.    2012 CA 24

v.                               :            T.C. NO.    11CR312

MATTHEW S. NALLEN                :              (Criminal appeal from
                                              Common Pleas Court)

    Defendant-Appellant          :

                                 :

         . . . . . . . . . .

## **O P I N I O N**

Rendered on the _____26th_____ day of ___July___, 2013.

         . . . . . . . . . .

ROBERT E. LONG III, Atty. Reg. No. 0066796, Assistant Prosecuting Attorney, 201 W. Main Street, Safety Building, Troy, Ohio 45373
      Attorney for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. No. 0066964, 2365 Lakeview Drive, Suite C, Beavercreek, Ohio 45431
      Attorney for Defendant-Appellant

         . . . . . . . . . .

FROELICH, J.

    **{¶ 1}**  Matthew S. Nallen appeals from a judgment of the Miami County

Court of Common Pleas, which revoked his community control and sentenced him to an aggregate term of twelve months of incarceration. For the following reasons, the judgment of the trial court will be affirmed.

{¶ 2} In November 2011, Nallen was charged by bill of information for attempted failure to comply with a police officer and theft, felonies of the fourth and fifth degree, respectively. He pled no contest to each charge. The court found him guilty and ordered a presentence investigation. Nallen was subsequently sentenced to two years of community control. He was also informed that, if he violated the terms of his community control, he would be sentenced to 17 months for the attempted failure to comply and to 11 months for the theft, to be served concurrently, and that he may be subject to postrelease control for three years.

{¶ 3} The community control listed numerous conditions of supervision, including that Nallen obey all laws, submit to drug testing, comply with the orders of his supervising officer, obtain written permission to travel, not purchase, possess, own, use or control firearms, ammunition, or other deadly weapons, and comply with additional "special conditions." The special conditions included the following: 1) pay court costs of this case, 2) attend counseling as directed by his supervisor, 3) "gain and maintain full-time employment," 4) undergo a substance abuse assessment, 5) pay restitution in the amount of $3,674.86, 6) "continue with MCRC [Miami County Recovery Council] (for mental health counseling) ," 7) obtain a substance abuse evaluation and complete any recommended or necessary follow-up, and 8) not consume any controlled substance, drug of abuse, or substance that requires a prescription without a prescription. The judgment also gave

Nallen "notice" that he would be subject to warrantless searches pursuant to R.C. 2967.131.[1]

{¶ 4} In October 2012, a notice of community control violation hearing was filed in Nallen's case. The notice alleged that he had violated the following conditions and special conditions: 1) the condition that he obey all laws, by stopping payment on a $2,500 check for a vehicle he had purchased, 2) the condition that he follow orders of his supervising officer, by failing to report when ordered to do so, 3) the condition that he obtain permission before traveling out of state, and 4) the special conditions that he pay court costs, gain and maintain full-time employment, pay restitution, attend recommended programming at MCRC, and not consume any controlled substance, drug of abuse, or substance that requires a prescription (as evidenced by a urine screen that tested positive for benzodiazepines).

{¶ 5} At the hearing on the alleged violations, Nallen admitted to violating the special conditions related to non-payment of court costs and restitution and failure to gain and maintain employment, in exchange for which the State withdrew all of the other allegations. His attorney noted that the violations all related to Nallen's inability to obtain employment, due in part to health issues and to his felony convictions. The attorney asserted that Nallen continued to look for employment and, if prohibited by his health issues from working, would apply for Social Security disability. The attorney requested that the

---

[1] R.C. 2967.131(C) and R.C. 2951.02(A) contain nearly identical language about supervising officers' right to conduct a search of a supervisee's person, residence, vehicle, and "another item of tangible or intangible personal property" "with or without a warrant," if the supervising officers have "reasonable grounds." We note, however, that R.C. 2967.131(C) applies to parolees and others who have been released from a state correctional institution, whereas R.C. 2951.02 applies to a felon with a "nonresidential sanction," such as community control.

court continue Nallen on community control. Nallen also spoke on his own behalf, claiming that he had been having a lot of seizures which interfered with his ability to keep a job, and offering to "even do an ankle bracelet." By agreement, the State remained silent as to the disposition of the violations.

{¶ 6} The court inquired about Nallen's probation officer, who was not present at the hearing. Defense counsel asserted that the probation officer, Kenna Longstreath, had Nallen arrested when he missed a scheduled meeting with her, although Nallen had been hospitalized with seizures at the time of the scheduled meeting. The court questioned whether he was not, in fact, arrested because he had left the state again without permission. Another probation officer who was present in court stated that, in light of the court's question about whether Nallen had left the State, she believed Longstreath would like an opportunity to make a statement to the court; the probation officer also presented evidence that Nallen had been out-of-state in that he was released from a clinic in Richmond[2] during his period of community control.

{¶ 7} The court asked Nallen whether his mother had taken him "over there," and he denied that she had. Defense counsel then stated: "I can tell you that he's been going to that methadone clinic for quite some time. * * * I don't know what the issue would be; he's been receiving regular treatment at the methadone clinic." The court responded that such treatment at an out-of-state clinic would be permitted only if Nallen obtained permission from his probation officer to leave the state. Defense counsel stated that the treatment at the

---

[2]The parties apparently refer to Richmond, Indiana.

methadone clinic was longstanding and that the probation officer would have had no reason to deny Nallen permission to receive the treatment. The court also had before it a letter from Nallen's mother claiming that the treatment was necessary for Nallen's health and that a visit to the clinic required them to be in Indiana for "only fifteen minutes."

**{¶ 8}** Due to the uncertainty about whether Nallen's probation officer had known of or had given permission for Nallen to receive treatment at the clinic in Richmond, Indiana, the court continued the hearing in order that the probation officer or officers who had been involved in Nallen's case could clarify the information before the court.

**{¶ 9}** The next day, Kenna Longstreath appeared before the court and detailed the reasons she considered Nallen to be in violation of his community control requirements, including an unapproved trip to Tennessee and failure to work with MCRC regarding mental health counseling. Nallen claimed that another probation officer, Jenny Christner, who had apparently been his officer at one time, had told him that he did not need to work with MCRC if he was going to the Richmond clinic. Christner, who was also present on the second day of the hearing, denied ever having told Nallen that he did not have to work with MCRC, but she did confirm Nallen's claim that he had had permission to go to the Richmond clinic daily for methadone treatment. Nallen claimed to have also received drug counseling at the clinic, but not mental health counseling.

**{¶ 10}** The court then, on its own initiative, turned the discussion to text messages on Nallen's cell phone. The court asked: "If I were to look at the messages on your cell phone that deal with a discussion of a gun, an automatic weapon, what would they tell me?" Nallen responded that he had texted with a friend about a television show involving guns.

The court then asked Longstreath to produce the phone, which she did, and the court reviewed some of the messages. The court read an exchange between Nallen and a friend in California about the cost of acquiring an automatic weapon and what kind of gun was good to carry. The men also discussed the prison time Nallen would face if caught with any gun, to which Nallen responded, "Go big or go home. You know me. Push the limits." Nallen asserted that the text conversation was a joke, but the judge stated that he was "not amused."

{¶ 11}  Based on the admitted violations and other behaviors discussed at the hearing, the trial court concluded that Nallen was not "amenable to community control anymore at this point." The reasons specifically cited by the court were Nallen's failure to get mental health counseling as he was ordered to do, going to Tennessee without prior permission, and failing to maintain employment. "[I]t's like your probation officer needs to almost follow you around every day to have some assurance that you're not violating the law, or you're making some serious attempt to comply with the terms and conditions of your community control." The court revoked Nallen's community control and sentenced him to twelve months for attempted failure to comply and eight months for theft, to be served concurrently, and mandatory postrelease control for three years.

{¶ 12}  Nallen appeals from the revocation of his community control, raising two assignments of error. The first assignment states:

THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS WHEN THE COURT PERMITTED AND CONSIDERED THE USE OF APPELLANT'S CELL PHONE RECORDS FOR THE PURPOSE OF

REVOKING APPELLANT'S COMMUNITY CONTROL AND SENTENCING APPELLANT TO A TERM OF IMPRISONMENT.

**{¶ 13}** Nallen asserts that the trial court violated his due process rights when it relied on "illegitimate" and "illicit" cell phone records. He claims that no evidence was offered as to how the cell phone was "obtained" or that an exception to the search warrant requirement applied, and that "the unforeseen and surprising use of these illicitly obtained cell phone texts did not allow [him or his attorney] the opportunity to properly prepare mitigation evidence concerning the truth of these texts."

**{¶ 14}** R.C. 2951.02 authorizes searches "with or without a warrant" of individuals under the supervision of probation officers if "the probation officers have reasonable grounds to believe that the offender is not abiding by the law, or otherwise is not complying with the terms and conditions of * * * the felony offender's nonresidential sanction." Thus, a warrantless search of a felon on community control and/or his personal property is permitted if the officer who conducts the search possesses "reasonable grounds" to believe that the offender has failed to comply with the terms of his or her community control. See *State v. Helmbright*, 10th Dist. Franklin No. 11AP-1080 and 11AP-1081, 2013-Ohio-1143, ¶ 20. The examination of the content of a cell phone is a search that falls within the auspices of the Fourth Amendment. *See State v. Underwood*, 9th Dist. Medina No. 10CA0048-M, 2011-Ohio-5703, ¶ 10; *State v. Williams*, 8th Dist. Cuyahoga No. 92822, 2010-Ohio-901, ¶ 18.

**{¶ 15}** Nallen contends that the State failed to establish a reasonable basis for the probation officer's search of his cell phone records. However, the State did not rely on

these records to establish the community control violations, which Nallen admitted. In fact, the State did not initiate the introduction of the cell phone evidence, but rather the court asked Nallen about the content of his phone directly. Nallen did not challenge the cell phone evidence at any time on the basis that a foundation for its use had not been laid. We cannot speculate on this record how the judge was aware of the content of the cell phone or on what basis the probation officer had decided to investigate it.

{¶ 16} Considering that Nallen admitted to several community control violations, that the State did not offer evidence related to his cell phone records, that no evidence was developed about the basis on which the probation officer searched the cell phone, and that Nallen did not challenge the examination of his phone in the lower court, we reject Nallen's argument that an unconstitutional search occurred and that he was prejudiced by it.

{¶ 17} Moreover, the record does not suggest that Nallen or his attorney was surprised by the use of the cell phone messages at the hearing. The probation officer produced the phone, and Nallen stated that he had not "seen" the cell phone for two or three weeks. Nallen explained who had been involved in the text conversation and offered explanations for some of the details. For example, when Nallen seemed to ask the friend from California to come to Tennessee, Nallen explained the reason for this request, namely, that Nallen had contemplated moving to Tennessee at the time of the conversation. (There was other evidence that Nallen had gone to Tennessee, without prior permission from his probation officer, for a job interview.) After the court read the exchange and asked if defense counsel would like to see it, counsel declined. Other than Nallen's assertion that the conversation was a joke, neither Nallen nor his attorney challenged the meaning of the

conversation or Nallen's participation in it.

{¶ 18} A defendant is entitled to due process when his community control is revoked as the result of a violation of a condition imposed on that control. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The due process rights which must be observed in a probation or community control revocation hearing are: (1) written notice of the claimed violations of probation or community control; (2) disclosure to the probationer of evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the fact finder as to the evidence relied upon and the reasons for revoking community control. *Id*., quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Nonetheless, a defendant who fails to timely object to a court's alleged due process violation during a community control revocation violation hearing waives all but plain error. (Citations omitted.) *State v. Foster*, 6th Dist. Nos. L-06-1126, L-06-1229, 2007-Ohio-1867, ¶ 12. Consequently, we must review Nallen's claim that his due process rights were violated for plain error. *State v. Hammonds*, 10th Dist. Franklin No. 06AP-1122, 2007-Ohio-4456, ¶ 7.

{¶ 19} Notice of plain error under Crim.R. 52(B) is "'to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *See State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Plain error does not exist unless, but for the error, the outcome of the criminal proceedings would clearly have

been different. *Hammonds* at ¶ 8, citing *State v. Moreland,* 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

{¶ 20}  A court's decision to revoke community control may be reversed on appeal only if the court abused its discretion.  *State v. Adams*, 2d Dist. Champaign 09 CA 37, 2011-Ohio-2562, ¶ 8; *State v. Williams*, 8th Dist. Cuyahoga No. 92769, 2012-Ohio-659, ¶ 17.

{¶ 21}  At the revocation hearing, Nallen admitted to violating three of the conditions of his community control.   On that basis alone, the court had a sufficient grounds to revoke community control.   The court discussed other aspects of Nallen's compliance with the terms of community control with Nallen and his attorney in weighing whether he should be allowed to continue on community control, as he requested, notwithstanding the admitted violations, or should be sentenced to a prison term.   In our view, the degree to which Nallen had complied with all of the terms of his community control and the seriousness with which he had approached his obligations therein were reasonable considerations in determining whether to give him another chance at community control. Nallen has cited no authority which would prohibit the consideration of other violations, even if they are not the formal basis for the revocation and are not admitted by the defendant, and we are aware of none.

{¶ 22}  There are undoubtedly circumstances in which a defendant is surprised by and/or unprepared for a court's consideration of alleged violations of the terms of community control other than those to which he has admitted.   He may be prejudiced in such circumstances, especially where, as here, some of those violations were not stated in the notice of revocation

hearing. However, there is no evidence that Nallen was surprised or unprepared for the court's consideration of his cell phone messages, which his probation officer seems to have previously examined, and he did not object to the court's consideration or discussion of his cell phone messages, nor did he request a continuance of the revocation hearing. We find no plain error.

{¶ 23} Moreover, the cell phone conversation in which Nallen seemed to be trying to obtain a weapon was by no means the only basis for the court's conclusion that he was not amenable to community control sanctions. In addition to Nallen's admitted failures to pay court costs and restitution and to gain and maintain employment, he admitted that he had gone to Tennessee without prior permission and had not followed through on any mental health counseling. Probation Officer Longstreath stated that, according to Nallen's "worker" at MCRC, he had not participated in its program beyond the initial assessment, despite his claims that he had been "active" with MCRC. Although Nallen claimed that he had been told by Probation Officer Christner that he did not have to continue with MCRC, she denied this claim.

{¶ 24} Again, it is unclear how the court knew of some of the additional, unadmitted violations. But Nallen was given an opportunity to respond to the allegations and did not object to the court's questioning him about these matters or ask for additional time to reply.

{¶ 25} Based on all of the circumstances presented to the court, we cannot conclude that it abused its discretion in terminating Nallen's community control or that Nallen's due process rights were violated by the manner in which the court conducted these proceedings. There were legitimate reasons to terminate Nallen's community control, including his admission to violating several of its conditions.

{¶ 26} The first assignment of error is overruled.

**{¶ 27}** Nallen's second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN REVOKING APPELLANT'S COMMUNITY CONTROL SANCTIONS AND SENTENCING THE APPELLANT TO A TERM OF IMPRISONMENT.

**{¶ 28}** Nallen contends that the trial court abused its discretion in revoking his community control for failure to pay court costs and restitution where there was no evidence that he had the ability to pay, where there was no evidence that he acted "intentionally and willfully" in not seeking or obtaining employment, and where health problems interfered with his ability to work.

**{¶ 29}** At the hearing, defense counsel stated that Nallen was a skilled computer technician and that he had interviewed for one job, but that he had "a significant amount of health problems that have interfered with his ability to work" and that his felony conviction also made it difficult for him to obtain work. On appeal, Nallen claims that he was "not fully given the opportunity to present mitigation evidence," such as medical and counseling records. But the transcript does not reveal any attempt on Nallen's part to offer such evidence, to show that such evidence exists, or to request a continuance. Moreover, because he had admitted to violating this condition of community control, the State did not have any burden to prove that he had acted willfully or intentionally in failing to gain or maintain employment. If Nallen wanted the court to better understand the reasons for the admitted violation and to consider mitigating evidence in deciding whether to continue community control, it was incumbent on him to offer such evidence, if it existed.

**{¶ 30}** The trial court did not abuse its discretion in revoking Nallen's community

control.   The second assignment of error is overruled.

**{¶ 31}**   The judgment of the trial court will be affirmed.

. . . . . . . . . .

WELBAUM, J., concurs.

DONOVAN, J., concurs in judgment only.

Copies mailed to:

Robert E. Long III
Thomas M. Kollin
Hon. Christopher Gee