[Cite as *State v. Wright*, 2015-Ohio-3919.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 26471 |
| | : | |
| v. | : | Trial Court Case Nos. 2011-CR-1514 |
| | : | 2013-CR-1346 |
| JAMES E. WRIGHT | : | 2014-CR-3193 |
| | : | |
| *Defendant-Appellant* | : | (Criminal Appeal from |
| | : | Common Pleas Court) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of September, 2015.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by DYLAN SMEARCHECK, Atty. Reg. No. 0085249, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ENRIQUE RIVERA-CEREZO, Atty. Reg. No. 0085053, 61 North Dixie Drive, Suite B, Vandalia, Ohio 45377
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** In this case, Defendant-Appellant, James Wright, appeals from his conviction for Petty Theft, and from the revocation of his community control in two prior criminal cases. Wright contends that the trial court erred by accepting a guilty plea to Petty Theft that was not knowingly, intelligently, or voluntarily given. Wright also contends that the trial court erred by failing to conduct a revocation hearing that was consistent with due process. Finally, Wright contends that the trial court erred in calculating his jail time credit and in reflecting the proper nature of his plea in the termination entry in one of the criminal cases.

**{¶ 2}** We conclude that the trial court did not err in accepting Wright's guilty plea, or in revoking Wright's community control based on Wright's violation of community control sanctions. However, the trial court did err by stating in the termination entry in Case No. 2011-CR-1514 that Wright had entered a guilty plea, when Wright pled no contest to the charge in that case. Accordingly, the judgment of the trial court will be affirmed, but the case will be remanded so the trial court can correct its clerical error in Case No. 2011-CR-1514.

I.   Facts and Course of Proceedings

**{¶ 3}** This case involves three criminal proceedings initiated against Wright. In September 2011, Wright was sentenced to community control in Montgomery County Common Pleas Court Case No. 2011-CR-1514, after pleading no contest to Domestic Violence, a fourth-degree felony. Various conditions were imposed, including 180 days detention in the Montgomery County Jail, attendance at job corps, no contact with the

victim, and so forth. Wright was on a "no breaks" status, and was told that if he violated any condition of community control or the law, other sanctions could be imposed, including a prison term of 18 months.

{¶ 4} Wright was released from jail on November 21, 2011, after receiving jail credit for time previously served. He was continued on community control, and on May 10, 2012, his supervision was modified from intensive to basic, based on positive strides. Subsequently, on March 28, 2013, Wright was arrested for a first-degree misdemeanor Theft. Wright's probation officer filed an offender arrest notice with the court on April 12, 2013, informing the court of the arrest, but recommending that no action be taken at that time.

{¶ 5} On May 13, 2013, the court filed an order suspending Wright's probationary period for community control and issuing an arrest warrant, based on representations that Wright's whereabouts had been unknown since April 19, 2013. Wright was then arrested on May 16, 2013, and a notice of preliminary hearing on supervision violations was filed on May 22, 2013. Among the alleged violations were that Wright had two theft charges pending in Dayton Municipal Court; that he had been declared an absconder on May 13, 2013; and that he had been terminated from the Stop the Violence Program on May 10, 2013.

{¶ 6} On June 5, 2013, Wright was reinstated to active community control, subject to the same conditions previously ordered. Wright was subsequently indicted on August 7, 2013, in Montgomery County Common Pleas Court Case 2013-CR-1346, on one count of Theft and one count of Breaking and Entering, both fifth-degree felonies. On August 26, 2013, a notice of revocation hearing and order was filed in the 2011 criminal case,

giving Wright notice of matters that constituted violations of community control, including the indictment in the 2013 felony case and his unsuccessful termination from the Volunteers of America Program on August 21, 2013. After continuances, a revocation hearing was set for October 8, 2013.

{¶ 7} On September 17, 2013, Wright pled guilty to one count of Theft in the 2013 case, and the Breaking and Entering charge was dismissed. Sentencing was set for October 8, 2013. On that date, Wright was sentenced to community control sanctions, including intensive probation supervision for up to five years; a drug and alcohol assessment; and completion of treatment at Eastway. Wright was also placed on "no breaks" status, and was told that if he violated any community control sanction or law, the court could impose additional sanctions, including a prison term of 12 months, to run concurrent with the prison term in the 2011 criminal case. In the 2011 criminal case, Wright was continued on his community control sanctions, subject to the previous sanctions that had been imposed.

{¶ 8} Subsequently, on May 27, 2014, an order of arrest was filed in the 2011 and 2013 cases, indicating that Wright had violated the terms of his probation by failing to report to the adult probation department, and further stating that Wright's whereabouts were unknown. On July 2, 2014, the court found that Wright was an absconder and ordered his arrest. Wright was then arrested in late July 2014. After a notice of revocation hearing and order was filed in both cases on August 7, 2014, Wright was ordered to appear on August 12, 2014.

{¶ 9} The notices contained allegations about seven violations of rules, including that Wright had been arrested on May 19, 2014 on a Theft complaint and had failed to

report it to the probation office. He had also failed to appear on May 20, 2014, in Dayton Municipal Court on an Attempted Petty Theft charge, and a bench warrant was issued for his arrest. In addition, the notices alleged that Wright had failed to report to the probation office as required; had failed to report changes of address and was an absconder; had stopped showing up at work and had given no notice; had admitted to relapsing with crack cocaine, despite treatment; had failed to comply with treatment; and had stolen checks and stolen property in his possession. Ultimately, hearings on the revocation proceedings were set for October 28, 2014.

{¶ 10} On October 27, 2014, a bill of information was filed in Montgomery County Common Pleas Court Case 2014-CR-3193, alleging that Wright had committed Petty Theft on May 19, 2014. On October 28, 2014, Wright waived indictment for the petty theft charge, consented that the charge be presented by a bill of information, and waived his right to three-day service of the bill of information. Wright also pled guilty to the Petty Theft charge on October 28, 2014.

{¶ 11} The revocation proceedings and plea were all heard by the same judge on October 28, 2014. At the hearing, the trial court advised Wright of his constitutional rights concerning the Petty Theft plea, accepted the plea, and found Wright guilty. The court then sentenced Wright to six months on the Petty Theft charge, and found that the sentence merged into the sentence on the two prior cases. In addition, the court revoked community control and sentenced Wright to 12 months in prison on the 2011 and 2013 convictions, with the sentences to be served concurrently for a total of 12 months in prison. The court also stated that Wright would be awarded 313 days of jail time credit. Wright now appeals from his Petty Theft conviction and the revocation of his community

control.

## II. Alleged Error in Accepting the Plea

{¶ 12} Wright's First Assignment of Error states that:

The Trial Court Committed Prejudicial Error by Accepting a Plea of Guilty that Was Not Knowingly and Freely Given in Violation of Rule 11(E) of the Ohio Rules of Criminal Procedure.

{¶ 13} Under this assignment of error, Wright contends that his guilty plea to the charge of Petty Theft in Case No. 2014-CR-3193 was not knowingly and freely given because he was not informed of the fact that his plea might result in revocation of community control. Wright acknowledges that a trial court generally does not have a duty to inform a defendant of how his guilty pleas may affect other criminal matters. However, Wright contends that the circumstances of the present case indicate that he was unaware that his plea would lead to a revocation minutes later. In this regard, Wright points to the fact that he asked for more time before sentencing, and stated that he was not ready at that point to plead guilty to the probation violation.

{¶ 14} We conclude that Wright's appeal concerning his misdemeanor conviction is moot because Wright failed to request a stay of the sentence, and he has completed his sentence. *Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, ¶ 17-23. Specifically, the misdemeanor sentence of 180 days was merged into the sentences for the earlier convictions, which were only one year in length. Wright was credited with 313 days of jail credit, which means that he would have been released from imprisonment, at the latest, less than two months after being sent to prison in late October

2014. The State has also asserted that Wright is not on probation or post-release control, and Wright has not challenged this assertion.

{¶ 15} However, even if the plea issue were not moot, we would reject Wright's argument. Wright correctly notes that Petty Theft is considered a petty offense under Crim.R. 2(D), and the trial court, therefore, only had to comply with Crim.R. 11(E). This rule states that:

In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty.

{¶ 16} In *State v. Watkins*, 99 Ohio St.3d 12, 2003-Ohio-2419, 788 N.E.2d 635, the Supreme Court of Ohio noted that:

A judge's duty to a defendant before accepting his guilty or no contest plea is graduated according to the seriousness of the crime with which the defendant is charged. Crim.R. 11 distinguishes between "[p]leas of guilty and no contest in felony cases" (Crim.R.11[C]), "[m]isdemeanor cases involving serious offenses" (Crim.R.11[D]), and "[m]isdemeanor cases involving petty offenses" (Crim.R.11[E]). The requirements placed upon a court take steady steps that culminate in Crim.R. 11(C).

In all cases, the judge must inform the defendant of the effect of his plea. In felony cases and misdemeanor cases involving serious offenses, a judge must also "addres[s] the defendant personally" and "determin[e] that the defendant is making the plea voluntarily."

*Id.* at ¶ 25-26. *Accord State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 6-14.

{¶ 17} Thus, "unlike Crim. R. 11(C)(2)(a), Crim. R. 11(E) does not require the trial court to personally address the defendant and determine that he understands the nature of the charge, and * * * unlike Crim. R. 11(C)(2)(a) and Crim. R. 11(D), Crim. R. 11(E) does not require the trial court to personally address the defendant and determine that he is making his plea voluntarily." *State v. Hopkins*, 2d Dist. Greene No. 2002-CA-108, 2003-Ohio-5963, ¶ 16. *See also Jones* at ¶ 22-23.

{¶ 18} Consistent with the requirement that trial courts inform defendants of the effect of their pleas, the trial court told Wright that a guilty plea would be a complete admission of guilt to petty theft. October 28, 2014 Transcript of Pleadings, p. 6. This is all that was required. *See Jones* at ¶ 25 (noting that "to satisfy the requirement of informing a defendant of the effect of a plea, a trial court must inform the defendant of the appropriate language under Crim.R. 11(B). In this case, before accepting a guilty plea to a misdemeanor for a petty offense, the court was required to inform [the defendant] that a plea of guilty is a complete admission of guilt.")

{¶ 19} Like Wright, the defendant in *State v. Lane*, 2d Dist. Greene Nos. 2001-CA-92, 2001-CA-93, 2002 WL 628643 (April 19, 2002), asserted that the trial court should have advised her of the effect her guilty plea would have on her probation for a prior theft offense. *Id.* at *5. We rejected this contention, stating that "[a]lthough the trial court is required, even in misdemeanor cases involving petty offenses, to inform the defendant of the effect of the plea of guilty, no contest, and not guilty, we have never construed that to include a requirement that the trial court advise a defendant of every potential collateral

consequence of a guilty plea." *Id.* *Accord State v. Condron*, 2d Dist. Montgomery No. 16430, 1998 WL 135817, *7 (Mar. 27, 1998); *State v. Holbern*, 6th Dist. Lucas No. L-76-040, 1976 WL 188363, *2 (June 11, 1976); *State v. Gibson*, 34 Ohio App.3d 146, 148, 517 N.E.2d 990 (8th Dist.1986); *State v. Hicks*, 5th Dist. Delaware No. 09CAA090088, 2010-Ohio-2985, ¶ 8; and *State v. Taylor*, 2d Dist. Greene No. 2010-CA-46, 2012-Ohio-963, ¶ 35 (all noting that the trial court need not inform defendants of collateral consequences when accepting pleas).

{¶ 20} Accordingly, the trial court complied with the requirements for accepting Wright's guilty plea, and was not required to inform Wright of collateral consequences that could result from his plea. We also note that the trial court informed Wright of various constitutional rights he would be waiving, even though the court did not have to do so. October 28, 2014 Transcript of Proceedings, p. 7.

{¶ 21} Based on the preceding discussion, the First Assignment of Error is overruled.

### III.   Due Process Claim

{¶ 22} Wright's Second Assignment of Error states that:

The Trial Court Erred When It Did Not Allow the Defendant to Have a Probation Revocation Hearing in Violation of the Defendant's Due Process as Established by *Gagnon v. Scarpelli*.

{¶ 23} Under this assignment of error, Wright contends that the trial court violated his constitutional rights by failing to permit him to present his case at the revocation hearing. In this regard, Wright contends that he did not know that he was having a plea

and revocation hearing at the same time.

{¶ 24} Before we address the merits of this issue, we must consider whether the appeal of the revocation proceedings is moot, given that Wright has already served his sentence. "Generally, '[w]here a defendant, convicted of a criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction.' " *State v. Montavon*, 10th Dist. Franklin No. 12AP-631, 2013-Ohio-2009, ¶ 6, quoting *State v. Wilson*, 41 Ohio St.2d 236, 325 N.E.2d 236 (1975), syllabus. "However, because a person convicted of a felony has a 'substantial stake in the judgment of conviction' that survives satisfaction of the judgment, 'an appeal challenging a felony conviction is not moot even if the entire sentence has been satisfied before the matter is heard on appeal.' " *Id.*, quoting *State v. Golston*, 71 Ohio St.3d 224, 643 N.E.2d 109 (1994), syllabus.

{¶ 25} In *Montavon*, the court of appeals observed that "the rationale underlying the *Golston* decision does not apply if an appeal solely challenges the *length* of a sentence rather than the underlying conviction. * * * 'If an individual has already served his sentence and is only questioning whether or not the sentence was correct, there is no remedy that can be applied that would have any effect in the absence of a reversal of the underlying conviction.' " (Emphasis sic.) *Id.*, quoting *Columbus v. Duff*, 10th Dist. Franklin No. 04AP-901, 2005-Ohio-2299, ¶ 12.

{¶ 26} In *Duff*, the Tenth District Court of Appeals applied the mootness doctrine to a situation in which the defendant's probation had been revoked and he had served

the sentence prior to the expiration of the appeal. The court of appeals noted that:

> At this juncture, whether or not appellant's argument has merit matters little, because this court can grant appellant no remedy. "Any appeal of a sentence already served is moot." *State v. Wright*, Cuyahoga App. No. 83781, 2004-Ohio-4077, at ¶ 18, citing *State v. Barcomb*, Cuyahoga App. No. 80196, 2002-Ohio-4435. "Once a person has served the sentence imposed, in the absence of a challenge to the underlying conviction, there is neither a collateral disability nor a loss of civil rights that can be remedied by a modification of the length of that sentence." *Id.* at ¶ 19.

*Duff* at ¶ 12.

{¶ 27} In the case before us, Wright is not challenging his 2011 or 2013 convictions; he is challenging the revocation of his community control sanctions and the imposition of 12-month terms of imprisonment in each case. However, since Wright has already served those sentences, there is no relief we can afford, in the absence of an indication that he is on post-release control or, as indicated above, that an appeal may not be moot because he is subject to continent liability. *Tilton*, 2d Dist. Montgomery No. 24527, 2011-Ohio-5564, at ¶ 18-19. *Accord State v. McCarty*, 2d Dist. Clark No. 2014-CA-70, 2015-Ohio-2877, ¶ 3-4; *State v. Bogan*, 2d Dist. Champaign No. 2012-CA-34, 2013-Ohio-1920, ¶ 4-6 (concluding that issue of propriety of revocation was moot because the defendant had served the term imposed).

{¶ 28} Assuming for the sake of argument that this issue is not moot, we note that "[t]he right to continue on community control depends on compliance with community control conditions and 'is a matter resting within the sound discretion of the court.' " *State*

*v. Schlecht*, 2d Dist. Champaign No. 2003-CA-3, 2003-Ohio-5336, ¶ 7, quoting *State v. Johnson,* 2d Dist. Montgomery No. 17420, 2001 WL 561312 , *4 (May 25, 2001).

{¶ 29} In *State v. Cunningham*, 2d Dist. Clark Nos. 2014-CA-99, 2014-CA-100, 2015-Ohio-2554, we noted that:

> A defendant is entitled to due process when his community control is revoked as the result of a violation of a condition imposed on that control. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The due process rights which must be observed in a community control revocation hearing are: (1) written notice of the claimed violations of community control; (2) disclosure of evidence against [the defendant]; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the fact finder as to the evidence relied upon and the reasons for revoking community control. *Gagnon* at 786, quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *State v. Nallen*, 2d Dist. Miami No. 2012 CA 24, 2013-Ohio-3284, ¶ 18.

*Cunningham* at ¶ 11.

{¶ 30} " 'The touchstone of due process is fundamental fairness.' " *State v. Salmons*, 2d Dist. Champaign No. 2003-CA-21, 2004-Ohio-3773, ¶ 11, quoting *State v. Mynhier*, 146 Ohio App.3d 217, 221, 765 N.E.2d 917 (1st Dist.2001), *overruled on other grounds, State v. Jackson*, 1st Dist. Hamilton No. C-140384, 2015-Ohio-2171, ¶ 14.

{¶ 31} After reviewing the record, we conclude that there was no lack of

fundamental fairness. To begin, Wright was advised in September 2011 that he was on "no breaks" status after his plea to the 2011 Domestic Violence charge. He was also told that a prison term of 18 months could be imposed for a violation of community control sanctions, which included a prohibition against violating any law.

**{¶ 32}** When Wright was sentenced in October 2013 on one count of theft, he was again told that he was on "no breaks" status and that the court could impose a prison term of 12 months, to run concurrent with the 2011 case, based on a future violation of community control sanctions. Again, the sanctions in question included a prohibition against violating any law. Wright received leniency at this time, because his 2011 community control could have been revoked for the 2013 violation of law. In fact, notices of probation violation had been filed in August 2013 based on the 2013 felony theft charge. However, the trial court decided to continue Wright on community control.

**{¶ 33}** On August 7, 2014, Wright was given notice of seven potential probation violations, including the fact that he had been arrested on a theft complaint by the Miami Township police on May 19, 2014. Counsel was appointed for Wright in connection with the criminal violation and for the revocation proceedings. Thereafter, the court issued various notices continuing the revocation hearings until October 28, 2014, which is also the day that Wright's plea in the 2014 Petty Theft case was accepted. Thus, Wright was well aware prior to the hearing that his revocation would be considered on October 28, 2014. During the hearing, the trial court first considered the plea on the Petty Theft charge, which, according to the bill of information, occurred on May 19, 2014. *See* Case No. 2014-CR-3193, Doc. # 5. This is the date of the offense referenced in the notice of revocation proceedings.

**{¶ 34}** When Wright pled guilty to the Petty Theft offense, the trial court informed him, as was noted, that a guilty plea would be an admission of guilt to the charge. October 28, 2014 Transcript of Proceedings, p. 6. The following exchange then occurred:

> THE COURT: And you're pleading guilty to that charge because you are, in fact, guilty of it?
>
> THE DEFENDANT: Yes, Sir.

*Id.* at p. 7.

**{¶ 35}** After accepting the plea and finding Wright guilty, the trial court stated that it would "proceed to sentencing on this matter and the revocation matters." *Id.* at p. 8. Thus, Wright was aware during the hearing that revocation was at issue.

**{¶ 36}** At this point, Wright's counsel asked for a week's continuance due to issues about how much jail time would be credited, or for a pre-sentence investigation on the misdemeanor charge. *Id.* at 8-10. The trial court denied the request. *Id.* at p. 10. The following exchange then occurred:

> THE COURT: Mr. Wright, anything you'd like to say before the court imposes sentence?
>
> THE DEFENDANT: Yeah. I'd like to have a week, Your Honor, to get some stuff together, so I can address the Court correctly on some stuff. If Your Honor would please allow me one more week before sentencing, because I'm not, at this point right now, ready to plead guilty to the violation. Right now – I'm at this point, denying the violation of probation. I'd like to have a hearing on that probation violation, Your Honor, because I believe

that I should be – I'm trying to think of the words I want. I need some help, Your Honor, and I don't think being locked up in an institution is going to help me with my problem. I think it's just going to make it worse.

* * *

* * * And see, the prisons are so full. I won't even get into a program to even try to help myself with the little bit of time I've got, where if I can go to the [MonDay Program], I can get right in and get the help I need, the mental help and the skills to – for my behavioral changes, to make better behavioral choices, so I don't keep coming in front of you. * * *

And you know, I was going to the Circles Program. I was doing good with that with Pastor Moss (phonetic), you know. * * * I will admit I did mess up, but I don't think it was bad enough that I should be sent away, that I should have a program to help me with my mental stability.

October 28, 2014 Transcript of Proceedings, pp. 10-13.

{¶ 37} During the remainder of the hearing, Wright admitted, of his own volition, a few more times that he had "messed up" and had committed other violations, including another misdemeanor theft charge, and "smoking" (presumably referring to an illegal substance, because smoking cigarettes would not be a violation of community control sanctions). *Id.* at pp. 13-14. Wright also continued to ask the court for leniency, because his fiancée had medical problems and because he was previously supposed to attend the MonDay Program, but had been given community control supervision instead. *Id.* at pp. 14-15.

{¶ 38} As the State points out, the revocation was based on Wright pleading guilty

to a new offense, and the trial court did not need to conduct a further hearing in order to find that Wright had violated his community control sanctions.

{¶ 39} The State's burden at revocation hearings is by a preponderance of the evidence. *State v. Wagner*, 179 Ohio App.3d 165, 2008-Ohio-5765, 900 N.E.2d 1089, ¶ 35 (2d Dist.). We conclude that the State met its burden.

{¶ 40} Moreover, even if the trial court had violated Wright's due process rights by failing to conduct a further hearing, any error would be harmless in view of Wright's own admissions that he violated community control. *Compare State v. Dunning*, 2d Dist. Greene No. 08-CA-07, 2009-Ohio-691, ¶ 13 (error in violating defendant's due process right to confront and examine witnesses during revocation hearing was harmless in view of defendant's admissions that he had violated community control). *Accord State v. Willis*, 5th Dist. Fairfield No. 05 CA 42, 2005-Ohio-6947, ¶ 15; *State v. Thompson*, 1st Dist. Hamilton Nos. C-140746, C-140747, 2015-Ohio-2836, ¶ 7 (any error in failing to hold preliminary hearing was harmless in view of defendant's admission to facts underlying alleged violation); *State v. Moschell*, 4th Dist. Athens No. 10CA5, 2010-Ohio-4576, ¶ 6 (defendant's " 'general' admission to violating community control would render any error [in the court's failure to state the violation with specificity] harmless.")

{¶ 41} Based on the preceding discussion, the Second Assignment of Error is overruled.


IV. Error in the Termination Entry

{¶ 42} Wright's Third Assignment of Error states that:

The Trial Court Erred to the Prejudice of the Appellant on Its

Termination Entry.

{¶ 43} Under this assignment of error, Wright contends that the trial court erred in failing to properly apply his jail time credit. It appears from the record that Wright spent 40 days in prison on the 2011 case, and had an additional 313 days in jail time credit. *See* October 28, 2014 Transcript of Proceedings, pp. 8-9 and 12. The record indicates that credit for the additional 40 days of time did not appear locally, but would be credited by the State prison system when Wright arrived. *Id.* at p. 9. Consistent with these facts, the trial court credited Wright with 313 days in the termination entry, but did not include an additional 40 days.

{¶ 44} According to the State, argument about jail time credit is moot pursuant to *State ex rel. Gordon v. Murphy*, 112 Ohio St.3d 329, 2006-Ohio-6572, 859 N.E.2d 928, which held that a defendant's appeal asking for jail time credit " 'is moot because his sentence has now expired and he has been released from prison.' " *Id.* at ¶ 6, quoting *Crase v. Bradshaw*, 108 Ohio St.3d 212, 2006-Ohio-663, 842 N.E.2d 513, ¶ 5.

{¶ 45} We agree with the State that this issue is moot. Wright was sentenced to two concurrent terms of 12 months in prison in October 2014, and was credited with 313 days of jail time. Even if Wright did not receive the additional 40 days of jail credit, he had only 52 days of prison time left, and would have been released from prison prior to the end of December 2014.

{¶ 46} Wright's final argument under this assignment of error is that the trial court erred by stating in the termination entry in Case No. 2011-CR-1514 that he pled "guilty" rather than "no contest." The State concedes error on this point, and suggests that the trial court can correct the error in a nunc pro tunc entry. We agree that the trial court

erred in this regard. The third assignment of error, therefore, will be sustained in part, and this matter will be remanded to the trial court for correction of the termination entry in Case No. 2011-CR-1514. *See, e.g., State v. Smith*, 10th Dist. Franklin No. 13AP-592, 2014-Ohio-712, ¶ 7 (remanding for correct designation of plea that had actually occurred).

{¶ 47} Accordingly, the Third Assignment of Error is overruled in part and is sustained in part.

## V.  Conclusion

{¶ 48} Wright's First and Second Assignments of Error having been overruled, and his Third Assignment of Error having been overruled in part and sustained in part, the judgment of the trial court is affirmed, but the case is remanded for the trial court to correct its clerical error in Case No. 2011-CR-1514.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

FROELICH, P.J., concurring:

{¶ 49} I agree that the second assignment of error is moot. I write only to comment on the procedure involved in the revocation.

{¶ 50} The notice of revocation alleged Appellant's arrest on the May 19 incident; he pled guilty to the offense two months later. He was not specifically told at his plea hearing that his plea constituted a violation of his community control, and I agree he need not have been.

{¶ 51} However, perhaps because of this, there was confusion by Appellant whether he was "plead[ing] guilty to the violation." And, indeed, it is not clear whether

he was revoked for his violation for being arrested, being convicted, the numerous other violations, or a combination.   Nor is it evident whether his request for "a hearing on the probation violation" was to factually dispute the violation(s) or to argue that he "should have a program" rather than be "sent away."

{¶ 52} The totality of the circumstances may have resulted in a remand, but, at this point, any error is harmless and I concur in judgment.

. . . . . . . . . .


Copies mailed to:

Mathias H. Heck, Jr.
Dylan Smearcheck
Enrique Rivera-Cerezo
Hon. Gregory F. Singer