[Cite as *State v. Huerta*, 2022-Ohio-210.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29059 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-3943 |
| | : | |
| ALVARO HUERTA | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 28th day of January, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. No. 0017456, 101 Southmoor Circle NW, Kettering, Ohio 45429
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Alvaro Huerta, having violated the conditions of his community control sanctions ("CCS"), appeals from his conviction, on his guilty plea, of one count of felonious assault (serious harm). Huerta was sentenced to an indefinite prison term of a minimum of two years and a maximum of three years.   We affirm the judgment of the trial court.

{¶ 2} On December 13, 2019, Huerta was indicted on one count of felonious assault, one count of domestic violence, and one count of violating a protection order. On March 4, 2020, Huerta pled guilty to felonious assault, and the remaining charges were dismissed in exchange for his plea.   Huerta filed a sentencing memorandum requesting community control.   On March 17, 2020, Huerta was sentenced to community control for a period not to exceed five years.   The judgment of conviction stated that, if Huerta violated any condition of his CCS or violated any law, the court could "impose a longer time under the same sanction, impose a more restrictive sanction, or a prison term" of a minimum of eight years to a maximum of 12 years, citing the Reagan Tokes Act.

{¶ 3} On November 30, 2020, the court issued a notice of a CCS revocation hearing, which stated that Huerta would be called upon to admit or deny three specific alleged violations.   The allegations were: 1) Huerta violated Rule 1, which required him to refrain from violating any law and to immediately get in touch with probation officer if he were arrested or questioned by a law enforcement officer, because he was arrested by Dayton Police on November 23, 2020, for violation of a temporary protection order and domestic violence; 2) Huerta violated Sanction 8, which required him not to have contact with the victims of his offenses or come within 1,000 feet of their person, residence, or

place of employment, even if the victim consented to contact, because his November 23 arrest involved one of the same victims, S.M.; and 3) Huerta violated Sanction 11, which required him to abstain from use of illegal drugs, drugs of abuse, and alcohol, because he admitted to his probation officer on November 25, 2020, that he had been at bars with the victim, S.M., drinking alcohol.

{¶ 4} The trial court set these matter for a hearing on December 7, 2020. At that time, Huerta appeared in court, and defense counsel acknowledged receipt of the revocation notice, waived its reading and any defects therein, waived the probable cause hearing, and entered a general denial. The court continued the matter to December 21, 2020, and ordered an alcohol assessment; it also ordered Huerta to have no contact with the victims.

{¶ 5} On December 21, 2020, at the start of proceedings, counsel for Huerta indicated that Huerta would like the matter set for a hearing, and the court scheduled the matter for February 1, 2021.

{¶ 6} On January 5, 2021, the court issued an amended notice of a CCS revocation hearing. The amended notice provided that Huerta would be called upon to admit or deny violations of Rule 1 and Sanctions 8 and 11, as set forth in the original notice, but added the following: regarding Rule 1, Huerta was arrested by the Dayton Police Department on January 5, 2021, for felonious assault and domestic violence; regarding Sanction 8, on January 5, 2021, Huerta was arrested for offenses involving one of the victims, S.M.; and regarding Sanction 11, during his arrest on January 5, Huerta informed arresting officers that he should not answer questions regarding the incident due to being intoxicated. The court set the matter for a hearing on January 11, 2021.

{¶ 7} On January 11, 2021, the court noted that the matter was before the court for a final hearing with respect to community control sanctions, but also discussed that Huerta had "a case pending grand jury" in Montgomery C.P. 2021-CR-46. The court also noted that an evidentiary hearing was set for February 1 on the CCS violations in the pending case, Montgomery C.P. No. 2019-CR-3943. Counsel for both parties agreed to proceed with the evidentiary hearing on February 1.

{¶ 8} At the February 1, 2021 hearing, the following exchange occurred:

THE COURT: * * * this matter is coming on today for an evidentiary hearing with respect to a notice of community control sanctions revocation that was filed on January the 5th of 2021.

It's my understanding, based on the discussions in chambers off the record, that there will be an admission of a violation and no evidentiary hearing today; is that correct?

[DEFENSE COUNSEL]: Your Honor, I believe so. But can I just have a moment with Mr. Huerta to further explain something?

THE COURT: Yes.

* * *

[DEFENSE COUNSEL]: Your Honor, thanks for the time. That was a good discussion I had with Mr. Huerta. At this time, Your Honor, he would like to admit to violating Sanction 11 on the revo that was dated, I believe, November 30th, 2020. It says there that he violated Sanction 11, a requirement that Defendant abstains from the use of illegal drugs, drugs of abuse and alcohol. Quote, "You admitted," that means, Mr. Huerta

admitted to his probation officer on November 25th, 2020, that he was at a bar with the victim, [S.M.], drinking alcohol.

THE COURT: Mr. Huerta, do you hear what counsel said?

THE DEFENDANT: I do, Your Honor.

THE COURT: Do you agree with that?

THE DEFENDANT: That was the basis of it - - the basic part of it, yes, sir. We didn't go there to drink but to discuss our counseling that we were going to attempt, but yes, sir, that's what happened.

THE COURT: So you agree with what your lawyer just said?

THE DEFENDANT: Yes, sir.

THE COURT: And you agree that you had a rule that required you from abstaining from the use of illegal drugs, drugs of abuse, and alcohol, and after having that rule imposed by the Court at your sentencing, I believe which was on March the 16th in this case, that you did, in fact, go to a bar with the victim, [S.M.], and you were drinking alcohol. You admit that?

THE DEFENDANT: That's correct.

{¶ 9} The court found a violation and scheduled sentencing for February 16, 2021, which was twice continued pending an assessment by the MonDay Community Based Correctional Facility.

{¶ 10} At sentencing on March 8, 2021, the court indicated that Huerta had been deemed ineligible for MonDay. The court indicated that it had considered the factors in R.C. 2929.11 and 2929.12 and further found as follows:

This is a second degree felony. The second degree felony has a

presumption of prison, and Mr. Huerta acknowledging the alcohol problem, however, the Court notes that there's violence involved in the offense and there was violence involved in an incident in January of this year, 2021, which led, I believe to the filing of this revo on January the 5th, 2021.

And I think, also, although it may not have been admitted, the Court can consider un-convicted behavior, unindicted behavior, maybe.

Mr. Huerta, to summarize it here, was on community control sanctions for a felonious assault, and that sentence of community control sanctions was entered on March the 16th of 2020, and on January 5th, 2021, Mr. Huerta was arrested for felonious assault and domestic violence, and the offenses involved [S.M.].

The Court had ordered that Mr. Huerta, in [its] community control sanctions * * * ordered Mr. Huerta to have no contact with [S.M.] and two other people, or come within 1,000 feet of their person, residence, place of employment, and Mr. Huerta did come in contact, within 1,000 feet of [S.M.]. I think he also came within 1,000 feet of [S.M.] on November 25, 2020. Was drinking alcohol on November 25th, 2020, which was against the - - or in violations of the sanctions.

So I know [S.M.] has previously advised the Court that she does not want to see a prison sentence imposed and I think she may have not been fully cooperative with respect to the - - fully cooperative with the Prosecution with respect to the January * * * 2021 incident.

The Court is concerned with safety and with simply the fact of when

on community control sanctions, one has to observe the sanctions and one has to observe the rules of the probation department.

Mr. Huerta, I believe on two occasions, while under supervision, has not observed the rules. That presents, among other things, a safety risk and it also is an implication or an indication of what will occur if he continues on community control supervision, with just local sanctions.

So in this case, the Court revokes community control sanctions and orders a prison term of two years, minimum to three years maximum.

{¶ 11} On appeal, Huerta asserts the following assignment of error:

THE TRIAL COURT VIOLATED HUERTA'S DUE PROCESS RIGHTS AND ABUSED ITS DISCRETION WHEN IT REVOKED COMMUNITY CONTROL.

{¶ 12} Huerta asserts that the trial court did not hold a preliminary hearing pertaining to the January 5 amended notice of CCS violations, in violation of his due process rights. He argues that, although he admitted to violating Sanction 11 of the November 30 notice, he did not make any admission pertaining to the January 5 amended notice, and that no evidence was presented in support of the alleged violations contained in the amended notice. Huerta also argues that his admission to a violation of the November 30 notice waived his right to a hearing on those violations, but not the January 5 violations.

{¶ 13} Huerta argues that on February 1, 2021, he admitted to violating Sanction 11 of the notice filed November 30, 2020, by admitting that he went to a bar with the victim on November 25, 2020, and consumed alcohol. But he did not admit to the remaining

violations contained in the November 30, 2020 notice or any of the violations contained in the January 5, 2021 amended notice. Huerta argues that he was not afforded a preliminary hearing regarding the January notice, which violated his due process rights. He also asserts that no evidence was presented in support of the violations contained in the amended notice, and "no findings were made as to these alleged violations."

{¶ 14} Finally, Huerta asserts that the trial court violated his due process rights when it revoked his community control and imposed a prison term based upon unsubstantiated allegations contained in the January 5 amended notice.

{¶ 15} The State responds that Huerta received both hearings as required by *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). According to the State, the hearing on February 1, 2021, "could be construed as his preliminary hearing" on the January 5, 2021 amended notice. The State asserts that, at the February 1, 2021 hearing, "it was determined, based upon his admission, that Huerta violated his community control sanctions," and if Huerta had not admitted to the violations, he would have had the opportunity to be heard at a full hearing as required by *Morrissey* and *Gagnon*. The State further asserts that the March 8, 2021 hearing "can be viewed as his final hearing, at which it was determined that revocation of his community control was the appropriate sanction." The State argues that, at the March hearing, Huerta "had the ability to present mitigating evidence in the nature of sentencing memorandums and oral advisements to the court as to why he should be continued on community control, be permitted to attend MonDay, and ultimately not receive a prison sentence."

{¶ 16} The State asserts that, even if this Court were to find that no preliminary

hearing was held on the January 5, 2021 notice, that issue has been waived, because Huerta did not request a preliminary hearing or object when the trial court failed to conduct one.   In response to Huerta's argument that his admission to a violation of the November 30, 2020 notice waived his right to a hearing on only those violations, not the January 5 violations, the State argues that Huerta "has not and cannot show that there was an error and, if there was an error, that the outcome of the proceedings would have been different" had he had a preliminary hearing, or that his community control violations would not have been revoked without his admission.

{¶ 17} Finally, the State asserts that the trial court advised defense counsel that, if the MonDay screen were unsuccessful, the court's "planned disposition" was to send Huerta to prison.   As such, Huerta was on notice that he would be receiving a prison sentence at his final revocation hearing, and he "could have and should have presented additional mitigating evidence or witnesses to prevent a prison sentence."   The State asserts that Huerta admitted to violating his CCS, and his community control was not revoked solely on the unindicted allegations that occurred on January 5, 2021.

{¶ 18} This Court has held:

> "The right to continue on community control depends upon compliance with community control conditions and is a matter resting within the sound discretion of the court. Accordingly, we review the trial court's decision to revoke a defendant's community control for an abuse of discretion.   Abuse of discretion has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Internal citations omitted.) *State v. Lewis,* 2d Dist. Montgomery No. 23505, 2010-Ohio-3652, ¶ 11.

A defendant is entitled to due process when his community control is revoked as the result of a violation of a condition imposed on that control. *Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The due process rights which must be observed in a community control revocation hearing are: (1) written notice of the claimed violations of community control; (2) disclosure of evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the fact finder as to the evidence relied upon and the reasons for revoking community control. *Gagnon* at 786, quoting *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *State v. Nallen,* 2d Dist. Miami No.2012 CA 24, 2013-Ohio-3284, ¶ 18.

"[C]ommunity control revocation proceedings are not the same as a criminal trial, and a revocation of community control punishes the failure to comply with the terms and conditions of community control, not the specific conduct that led to the revocation." *State v. Black,* 2d Dist. Montgomery No. 24005, 2011-Ohio-1273, ¶ 17. Upon revoking community control, the trial court may (1) lengthen the term of the community control sanction; (2) impose a more restrictive community control sanction; or (3) impose a prison term on the offender, provided that the prison term is within the range of prison terms available for the offense for which community control had been imposed and the term does not exceed the prison term specified in

the notice provided to the offender at the original sentencing hearing. R.C. 2929.15(B).

* * *

A trial court need not comply with the requirements of Crim.R. 11, which governs pleas, in accepting an offender's admission to community control violations. *See, e.g., State v. Brown,* 3d Dist. Logan No. 8-14-04, 2015-Ohio-468, ¶ 15; *State v. Lucas,* 6th Dist. Ottawa Nos. OT-13-025, OT-13-026, 2014-Ohio-3857, ¶ 7. Instead, Crim.R. 32.3 applies to revocation of community control. That Rule provides that the trial court "shall not impose a prison term for violation of the conditions of a community control sanction or revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which action is proposed."

*State v. Cunningham*, 2d Dist. Clark Nos. 2014-CA-99, 2014-CA-100, 2015-Ohio-2554, ¶ 10-12, 14.

{¶ 19} We see no abuse of discretion in the trial court's decision. On November 30, 2020, the CCS notice advised Huerta that he would be required to answer to the violations set forth therein on November 23, 2020, and a hearing was scheduled for December 7, 2020. The subsequent amended notice pertained to Huerta's arrest on January 5, 2021, and a hearing was set for January 11, 2021. On December 7, 2020, counsel for Huerta acknowledged receipt of the notice, waived its reading and any defects therein, entered a general denial, and waived the probable cause hearing. The court continued the matter of the original notice to December 21, 2020. On that date, the court set the matter for an evidentiary hearing on February 1, 2021. On January 11, 2021, the

date set for the hearing on the amended notice, the court clearly indicated, and the parties agreed, that the evidentiary hearing set for the original notice was scheduled for February 1, 2021. The court mistakenly noted at the start of the hearing on February 1, 2021, that "[t]his matter is coming on today for an evidentiary hearing with respect to the notice of community control sanctions revocation that was filed on January the 5th of 2021." However, at that hearing, Huerta clearly admitted violating Sanction 11 as set forth in the November 30, 2020 notice.

{¶ 20} At sentencing, the court noted that Huerta had been drinking alcohol on November 25, 2020, in violation of his community control sanctions. Contrary to Huerta's assertion, the court did not impose sentence based upon the allegations contained in the amended notice, none of which Huerta admitted, and the court acknowledged this fact at sentencing. The court revoked Huerta's community control for his admitted failure to comply with the terms and conditions of community control. Huerta's violent history was significant to the court, and the court was free to consider his arrest on January 5, 2021, for domestic violence against S.M. in imposing sentence. It "is well established that sentencing courts may consider arrests and even prior allegations that did not result in conviction before imposing sentence." *State v. Martin,* 7th Dist. Mahoning No. 16 MA 0160, 2018-Ohio-862, ¶ 7, citing *State v. Hutton,* 53 Ohio St.3d 36, 43, 559 N.E.2d 432 (1990). Huerta admitted violating his community control on February 1, 2021, and he was afforded all of his due process rights as set forth above. Since the trial court did not abuse its discretion in revoking Huerta's community control and imposing sentence, Huerta's assignment of error is overruled.

{¶ 21} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
J. David Turner
Hon. Timothy N. O'Connell